******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# ERIC THOMAS KELSEY *v.* COMMISSIONER
## OF CORRECTION
### (SC 20553)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to statute (§ 52-470 (d) (1) and (e)), when a habeas petitioner files
a subsequent petition for a writ of habeas corpus more than two years
after the date on which judgment on a prior habeas petition challenging
the same conviction is deemed final, there is a rebuttable presumption
that the filing of the subsequent petition has been delayed without good
cause, and the habeas court, upon the request of the Commissioner of
Correction, shall issue an order to show cause why the subsequent
petition should be permitted to proceed.

The petitioner, who had been convicted of felony murder and conspiracy
to commit robbery in the first degree, filed a second petition for a writ
of habeas corpus. The petitioner filed his second petition nearly five
years after this court denied his petition for certification to appeal from
the Appellate Court's judgment dismissing his appeal from the trial
court's denial of his first habeas petition. Because the second petition
was filed outside of the two year time limit for successive petitions set
forth in § 52-470 (d) (1), the habeas court issued an order to show cause
and held an evidentiary hearing on the issue of whether the petition
should be permitted to proceed. At the hearing, the petitioner testified
that he had not been aware of the time limitation set forth in § 52-470
(d) (1) because he had been in and out of prison and did not always
have access to law books or law libraries at certain correctional facilities
and while being held in administrative segregation. The habeas court
dismissed the second habeas petition, concluding that the petitioner's
proffered explanations as to why he had not been aware of the applicable
time limitation did not constitute sufficient good cause to excuse his
filing delay of nearly three years beyond the applicable time limitation.
On the granting of certification, the petitioner appealed to the Appellate
Court, which concluded that the habeas court's determination of
whether a petitioner has satisfied the good cause standard is reviewed
for an abuse of discretion and that the habeas court did not abuse its
discretion in dismissing the petitioner's untimely second habeas petition.
On the granting of certification, the petitioner appealed to this court.
*Held*:

1. The Appellate Court correctly concluded that a habeas court's determina-
tion of whether a petitioner has established good cause to overcome
the rebuttable presumption of unreasonable delay under § 52-470 (d)
and (e) is reviewed on appeal for an abuse of discretion: because § 52-
470 is silent and, therefore, ambiguous as to the proper standard of
appellate review, this court considered the legislative history of the
statute, including recent amendments thereto, which demonstrated that
the legislature intended for habeas courts to exercise significant discre-
tion in making determinations regarding good cause in order to further
the goals of comprehensive habeas reform, including averting frivolous
habeas petitions and appeals; moreover, the good cause analysis contem-
plated by § 52-470 (e) requires a habeas court to balance numerous
factors, including whether external forces outside the petitioner's con-
trol had any bearing on the delay, whether and to what extent the
petitioner or counsel bears personal responsibility for any excuse prof-
fered for the untimely filing, whether the reasons proffered by the peti-
tioner in support of a finding of good cause are credible and are sup-
ported by the evidence, and how long after the expiration of the filing
deadline did the petitioner file the petition, and this court previously
had held that, when a lower court's finding requires such a balancing
of factors, many of which are factual in nature, such a finding is reserved
on appeal only when there has been an abuse of discretion.

2. The Appellate Court correctly determined that the habeas court did not
abuse its discretion in finding that the petitioner had failed to establish

good cause for his untimely filing of his second habeas petition: although the legislative history of recent amendments to § 52-470 demonstrated that the legislature had contemplated a petitioner's lack of knowledge of the law or of a change in the law as being relevant to establishing good cause, the legislature did not intend for such a lack of knowledge, standing alone, to establish that a petitioner has met his or her burden of establishing good cause; in the present case, the petitioner failed to demonstrate that his conditions of confinement had any bearing on the delay insofar as they caused his lack of awareness of the statutory deadline, as the petitioner testified that, in the ten months leading up to the two year deadline for filing his second petition, he was housed in general population at a correctional facility at which he had access to a resource center that contained various legal resources and law books, including the General Statutes, it was reasonable for the court to consider the fact that more than two years had elapsed since the filing deadline, and those considerations were not outweighed by any of the other factors that the habeas court could have considered in assessing good cause; accordingly, the Appellate Court properly affirmed the judgment dismissing the petitioner's habeas petition.

Argued November 17, 2021—officially released May 24, 2022

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Newson, J.*, rendered judgment dismissing the petition, from which the petitioner, on the granting of certification, appealed to the Appellate Court, *Prescott, Suarez* and *DiPentima, Js.*, which affirmed the habeas court's judgment, and the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Naomi T. Fetterman*, assigned counsel, for the appellant (petitioner).

*Laurie N. Feldman*, deputy assistant state's attorney, with whom, on the brief, were *Brian W. Preleski*, state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ROBINSON, C. J. The principal issue in this certified appeal requires us to consider the appropriate appellate standard by which to review a habeas court's determination pursuant to General Statutes § 52-470 (d) and (e)[1] that a petitioner failed to rebut the statutory presumption that a successive petition for a writ of habeas corpus filed beyond statutorily prescribed time limits is the result of unreasonable delay, which requires the court to dismiss the petition. The petitioner, Eric Thomas Kelsey, appeals, upon our grant of his petition for certification,[2] from the judgment of the Appellate Court affirming the judgment of the habeas court, which dismissed his second petition for a writ of habeas corpus following its determination that the petitioner had failed to establish good cause for the delayed filing of that second petition. See *Kelsey* v. *Commissioner of Correction*, 202 Conn. App. 21, 43–44, 244 A.3d 171 (2020). On appeal, the petitioner claims that the Appellate Court improperly (1) reviewed the habeas court's dismissal of his second petition pursuant to § 52-470 (e) under the abuse of discretion standard, and (2) concluded that the habeas court correctly determined that the petitioner had failed to establish good cause for the untimely filing of his second petition. We disagree with both claims and, accordingly, affirm the judgment of the Appellate Court.

The record reveals the following relevant facts and procedural history, aptly set forth by the Appellate Court in its decision. "In December, 2003, a jury [found] the petitioner [guilty] of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (3) and felony murder in violation of General Statutes § 53a-54c. See *State* v. *Kelsey*, 93 Conn. App. 408, 889 A.2d 855, cert. denied, 277 Conn. 928, 895 A.2d 800 (2006). The [trial] court sentenced the petitioner to a total effective term of forty years of incarceration. [The Appellate Court] affirmed the judgment of conviction on direct appeal, rejecting the petitioner's claims that the trial court improperly had admitted into evidence certain out-of-court statements and had denied his motion for a mistrial based on the state's failure to preserve and produce exculpatory evidence. Id., 410, 416. [This court] denied certification to appeal [from the Appellate Court's] decision.

"After exhausting his direct appeal, in August, 2007, the petitioner filed his first petition for a writ of habeas corpus challenging his conviction. Following a trial on the merits, the habeas court denied the petition. [The Appellate Court] dismissed the petitioner's appeal from the judgment of the habeas court by memorandum decision; *Kelsey* v. *Commissioner of Correction*, 136 Conn. App. 904, 44 A.3d 224 (2012); and [this court] thereafter denied [his petition for] certification to appeal from the judgment of [the Appellate Court on July 11, 2012].

*Kelsey* v. *Commissioner of Correction*, 305 Conn. 923, 47 A.3d 883 (2012).

"Nearly five years later, on March 22, 2017, the petitioner filed the underlying second petition for a writ of habeas corpus that is the subject of the present [certified] appeal. The petitioner raised seven claims not raised in his earlier petition. On May 9, 2017, the respondent, the Commissioner of Correction, filed a request with the habeas court pursuant to § 52-470 (e) for an order directing the petitioner to appear and show cause why his second petition should be permitted to proceed in light of the fact that the petitioner had filed it well outside the two year time limit for successive petitions set forth in § 52-470 (d) (1). . . . The habeas court, *Oliver, J.*, initially declined to rule on the respondent's request for an order to show cause, concluding that the request was premature and that the court lacked discretion to act on the respondent's request because the pleadings in the case were not yet closed. See *Kelsey* v. *Commissioner of Correction*, 329 Conn. 711, 714, 189 A.3d 578 (2018).

"After the habeas court denied the respondent's motion for reconsideration, the Chief Justice granted the respondent's request to file an interlocutory appeal from the order of the habeas court pursuant to General Statutes § 52-265a. [This court] rejected the habeas court's reliance on § 52-470 (b) (1) as its basis for not acting on the respondent's request for an order to show cause and concluded that 'the habeas court's decision to take no action on the respondent's motion was predicated on its mistaken belief that it lacked discretion to act' and that '[i]t is well established that when a court has discretion, it is improper for the court to fail to exercise it.' Id., 726. [This court] reversed the habeas court's decision and remanded the case to the habeas court for further proceedings consistent with its opinion. Id.

"In accordance with [this court's] remand order, the habeas court, *Newson, J.*, issued an order to show cause and conducted an evidentiary hearing. The only evidence presented at the hearing was the testimony of the petitioner. The respondent chose not to cross-examine the petitioner or to present any other evidence at the show cause hearing. The court also heard legal arguments from both sides.

"Thereafter, on March 20, 2019, the habeas court . . . dismiss[ed] the petitioner's second habeas petition. In its decision, the habeas court first set forth the relevant provisions of § 52-470 and quoted [the Appellate Court's] statement in *Langston* v. *Commissioner of Correction*, 185 Conn. App. 528, 532, 197 A.3d 1034 (2018), appeal dismissed, 335 Conn. 1, 225 A.3d 282 (2020), that good cause is 'defined as a substantial reason amounting in law to a legal excuse for failing to perform an act required by law.' The habeas court deter-

mined that the petitioner's proffered excuse failed to establish good cause under the statute, stating: '[T]he petitioner had until July 12, 2014, to file his next habeas petition challenging this conviction, but he did not file it until nearly three years beyond that date. The petitioner's claim for delay was that he was sometimes in and out of prison and did not always have access to law books and the law libraries at times when he was held in higher security facilities. He also attempts to offer the excuse that he was not aware of § 52-470. Neither of these is sufficient "good cause" to excuse the petitioner's delay of nearly three years beyond the appropriate filing deadline for this matter.' In support of its analysis, the habeas court, citing *State* v. *Surette*, 90 Conn. App. 177, 182, 876 A.2d 582 (2005), noted parenthetically that 'ignorance of the law excuses no one.' On the basis of its determination that the petitioner lacked good cause for the delay in filing the successive petition, the [habeas] court dismissed the petition." (Citation omitted; footnotes omitted.) *Kelsey* v. *Commissioner of Correction*, supra, 202 Conn. App. 24–27.

The petitioner, on the granting of certification, appealed from the judgment of dismissal to the Appellate Court, which determined that (1) a habeas court's determination of whether a petitioner has satisfied the good cause standard is reversible only for an abuse of discretion; id., 36; and (2) the petitioner failed to demonstrate that the habeas court abused its discretion by dismissing the petitioner's untimely successive petition. Id., 43. Accordingly, the Appellate Court affirmed the judgment of the habeas court. Id., 44. This certified appeal followed. See footnote 2 of this opinion.

On appeal to this court, the petitioner claims that the Appellate Court incorrectly concluded that (1) appellate review of whether a habeas court properly dismissed a petition for a writ of habeas corpus under § 52-470 (d) and (e) is for abuse of discretion, and (2) the petitioner had not established the good cause necessary to overcome the rebuttable presumption of unreasonable delay. We address each claim in turn.

I

We first address the petitioner's claim that, in reviewing the habeas court's determination regarding good cause for abuse of discretion, the Appellate Court improperly disregarded the long-standing jurisprudence articulated in *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 223 A.3d 368 (2020), and *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 941 A.2d 248 (2008), namely, that conclusions reached by a habeas court in a decision to dismiss a habeas petition are matters of law subject to plenary review. The petitioner argues that, despite the Appellate Court's attempt to differentiate dismissals pursuant to § 52-470 from the preliminary dismissals at issue in *Gilchrist*, plenary review applies irrespective of the basis for the habeas

court's dismissal. In response, the respondent argues that *Gilchrist* and *Johnson* are inapposite because the grounds for dismissal in those cases presented pure questions of law and that reviewing a good cause determination only for abuse of the court's discretion is consistent with the legislature's intent in enacting § 52-470 and the broader purposes of the habeas process. We agree with the respondent and conclude that a habeas court's determination of whether a petitioner has satisfied the good cause standard under § 52-470 (d) and (e) is reviewed on appeal for abuse of discretion.

Whether the Appellate Court applied the proper standard of review to the habeas court's dismissal of the petition following its determination that the petitioner failed to establish good cause, as required by § 52-470 (e), presents an issue of statutory construction, which is a question of law over which we exercise plenary review. See, e.g., *People for the Ethical Treatment of Animals, Inc.* v. *Freedom of Information Commission*, 321 Conn. 805, 815–16, 139 A.3d 585 (2016) (determining standard of review applicable to General Statutes § 1-210 (b) (19) presented question of statutory interpretation, over which our review is plenary). This court follows "the plain meaning rule pursuant to General Statutes § 1-2z in construing statutes to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 696, 258 A.3d 1268 (2021).

As required by § 1-2z, we begin with the text of § 52-470.[3] Section 52-470 (d) provides in relevant part that, "[i]n the case of a petition filed subsequent to a judgment on a prior petition challenging the same conviction, there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed after . . . October 1, 2014 . . . ." Section 52-470 (e) provides in relevant part that, "[i]f . . . the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition. . . ." See footnote 1 of this opinion (complete relevant text of § 52-470 (d) and (e)).

The statute is silent as to the standard of appellate review applicable to the good cause determination by a habeas court. Silence renders a statute ambiguous when the missing subject reasonably is necessary to effectuate the provision as written, and the missing subject renders the statute susceptible to more than one plausible interpretation. See, e.g., *State* v. *Ramos*, 306 Conn. 125, 136–37, 49 A.3d 197 (2012); see also *Stuart* v. *Stuart*, 297 Conn. 26, 37, 996 A.2d 259 (2010) (silence as to standard of proof rendered statute ambiguous because there was "more than one plausible interpretation of its meaning"). When silence renders a statutory provision ambiguous as to the issue at hand, "our analysis is not limited by . . . § 1-2z . . . . In addition

to the words of the statute itself, we look to . . . the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 407, 944 A.2d 925 (2008).

Beginning with the legislative history, we observe that, in 2012, the legislature amended § 52-470 with the goal of enacting comprehensive habeas reform. *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 566–67, 153 A.3d 1233 (2017). The amendments were "intended to supplement that statute's efficacy in averting frivolous habeas petitions and appeals. . . . [Moreover] the reforms were the product of collaboration and compromise by representatives from the various stakeholders in the habeas process, including the Division of Criminal Justice, the Office of the Chief Public Defender, the criminal defense bar, and the Judicial Branch." (Citations omitted.) Id., 567. The legislative history, including the testimony before the Judiciary Committee,[4] demonstrates that § 52-470 was intended to grant habeas courts "a lot of discretion" in weeding out nonmeritorious habeas claims. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 15, 2012 Sess., p. 4785, remarks of Chief State's Attorney Kevin T. Kane.

Further, as the Appellate Court correctly observed, our prior resolution of the interlocutory appeal in the present case also heavily emphasized "the discretion that the legislature granted habeas courts to achieve the goals of habeas corpus reform . . . ." *Kelsey* v. *Commissioner of Correction*, supra, 202 Conn. App. 31. In discussing the habeas court's obligation under § 52-470 (e) to give the petitioner a "meaningful opportunity" to investigate the delay in filing a successive petition, we stated that the "lack of specific statutory contours as to the required 'meaningful opportunity' suggests that the legislature intended for the court to exercise its discretion in determining, considering the particular circumstances of the case, what procedures should be provided to the petitioner in order to provide him with a meaningful opportunity, consistent with the requirements of due process, to rebut the statutory presumption." *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 723. Thus, we agree with the Appellate Court's subsequent conclusion that "the absence of a detailed statutory definition of the good cause standard [indicates] that the legislature intended the habeas court to exercise significant discretion in making determinations regarding 'good cause.' " *Kelsey* v. *Commissioner of Correction*, supra, 202 Conn. App. 31.

We also agree with the respondent that the authorities the petitioner relies on in support of his claim are inapposite. Although the petitioner correctly observes that

*Gilchrist* broadly stated that "[w]hether a habeas court properly dismissed a petition for a writ of habeas corpus presents a question of law over which our review is plenary"; *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 553; the present case is distinguishable with regard to the level of discretion exercised by the habeas court in deciding whether good cause exists. As the Appellate Court stated, "a habeas court's determination of whether a petitioner has satisfied the good cause standard in a particular case requires a weighing of the various facts and circumstances offered to justify the delay, including an evaluation of the credibility of any witness testimony." *Kelsey* v. *Commissioner of Correction*, supra, 202 Conn. App. 35–36. In contrast, *Gilchrist* presented a pure question of law, namely, whether the dismissal of a habeas petition under Practice Book § 23-29[5] can precede the habeas court's determination to issue the writ under Practice Book § 23-24.[6] See *Gilchrist* v. *Commissioner of Correction*, supra, 553. Resolving this question required the court to interpret the language of the rules of practice, a task that is a well established subject of plenary review. See, e.g., *Wiseman* v. *Armstrong*, 295 Conn. 94, 99, 989 A.2d 1027 (2010). Further, as the respondent argues, the underlying grounds for dismissal enumerated in Practice Book §§ 23-24 and 23-29—e.g., lack of jurisdiction, res judicata, mootness, and ripeness—present pure questions of law. See, e.g., *U.S. Bank National Assn.* v. *Rothermel*, 339 Conn. 366, 373, 260 A.3d 1187 (2021) (mootness implicates court's subject matter jurisdiction and, thus, is question of law); *Great Plains Lending, LLC* v. *Dept. of Banking*, 339 Conn. 112, 120, 259 A.3d 1128 (2021) (determination regarding trial court's subject matter jurisdiction is question of law); *Francis* v. *Board of Pardons & Paroles*, 338 Conn. 347, 359, 258 A.3d 71 (2021) (issues regarding justiciability, namely, ripeness, raise question of law); *Weiss* v. *Weiss*, 297 Conn. 446, 458, 998 A.2d 766 (2010) (applicability of res judicata and collateral estoppel presents question of law); see also footnotes 5 and 6 of this opinion.

Finally, the petitioner argues that good cause determinations made by a habeas court are comparable to a habeas court's determination that a claim has been procedurally defaulted, which is subject to plenary review, and, thus, that good cause determinations should also receive plenary review on appeal. Specifically, the petitioner argues that, similar to establishing good cause under § 52-470, the standard for establishing the cause required to overcome procedural default is equally vague and also requires that the petitioner be heard as to the reason for noncompliance. In response, the respondent contends that the existence of good cause for purposes of excusing late filings under § 52-470 (e) is a broader and more fact dependent concept than is the "cause" considered in the context of procedural default. The respondent argues that what constitutes

cause for a procedural default is only a narrow subset of what can constitute good cause under § 52-470 (e). We agree with the respondent.

By way of background, "a petitioner who raises a constitutional claim for the first time in a habeas proceeding must show: (1) cause for the procedural default, i.e., for the failure to raise the claim previously; and (2) prejudice resulting from the alleged constitutional violation. In the absence of such a showing, a court will not reach the merits of the claim." (Internal quotation marks omitted.) *Newland* v. *Commissioner of Correction*, 331 Conn. 546, 553, 206 A.3d 176 (2019). "A respondent seeking to raise an affirmative defense of procedural default must file a return to the habeas petition responding to the allegations of the petitioner and alleg-[ing] any facts in support of any claim of procedural default . . . . Only after the respondent raises the defense of procedural default in accordance with [Practice Book] § 23-30 (b) does the burden shift to the petitioner to allege and prove that the default is excused." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 175–76, 982 A.2d 620 (2009). "[T]he existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule." (Internal quotation marks omitted.) Id., 191. For example, a showing that the factual or legal basis for a claim was not reasonably available to counsel would constitute an objective external factor. See, e.g., *Saunders* v. *Commissioner of Correction*, 343 Conn. 1, 20, 272 A.3d 169 (2022).

In contrast to "cause" for procedural default, the Appellate Court correctly observed in the present case that "factors directly related to the good cause determination [under § 52-470 (e)] include, but are not limited to: (1) whether external forces outside the control of the petitioner had any bearing on the delay; (2) whether and to what extent the petitioner or his counsel bears any personal responsibility for any excuse proffered for the untimely filing; (3) whether the reasons proffered by the petitioner in support of a finding of good cause are credible and are supported by evidence in the record; and (4) how long after the expiration of the filing deadline did the petitioner file the petition. No single factor necessarily will be dispositive, and the court should evaluate all relevant factors in light of the totality of the facts and circumstances presented." *Kelsey* v. *Commissioner of Correction*, supra, 202 Conn. App. 34–35. This good cause analysis requires habeas courts to balance numerous factors, whereas the cause determination for overcoming a procedural default typically turns only on whether the petitioner has demonstrated that an objective factor external to the defense impeded compliance with the procedural

rule.[7] See *Crawford* v. *Commissioner of Correction*, supra, 294 Conn. 191.

In discussing § 52-470, we have described "[t]he habeas court's exercise of its discretion to manage [cases as] the best tool to . . . balance the principles of judicial economy and due process." (Citation omitted.) *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 726. Generally, when a finding requires the balancing of several factors, many of which require factual determinations, as the Appellate Court properly identified in the present case, this court has held that such conclusions are reversed only for an abuse of discretion. See, e.g., *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 461, 904 A.2d 137 (2006) ("A trial court exercising its discretion in determining whether to grant a motion for permissive intervention balances 'several factors [including] . . . the timeliness of the intervention, the proposed intervenor's interest in the controversy, the adequacy of representation of such interests by other parties, the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and the necessity for or value of the intervention in resolving the controversy [before the court]. . . . [A] ruling on a motion for permissive intervention would be erroneous only in the rare case [in which] such factors weigh so heavily against the ruling that it would amount to an abuse of the trial court's discretion.' "); *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 307, 852 A.2d 703 (2004) ("In determining whether to admit evidence of a conviction, the court shall consider: (1) the extent of the prejudice likely to arise; (2) the significance of the particular crime in indicating untruthfulness; and (3) the remoteness in time of the conviction. . . . 'Moreover, [i]n evaluating the separate ingredients to be weighed in the balancing process, there is no way to quantify them in mathematical terms.' . . . Therefore, '[t]he trial court has wide discretion in this balancing determination and every reasonable presumption should be given in favor of the correctness of the court's ruling . . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done.' " (Citations omitted.)). Accordingly, we conclude that a habeas court's determination regarding good cause under § 52-470 (e) is reviewed on appeal only for abuse of discretion. "Thus, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling[s] . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did." (Citation omitted; internal quotations marks omitted.) *State* v. *Davis*, 298 Conn. 1, 11, 1 A.3d 76 (2010).

II

Having articulated the proper standard of review, we

now turn to the petitioner's claim that the Appellate Court incorrectly concluded that the habeas court properly exercised its discretion in finding that he had failed to establish the good cause necessary to overcome the rebuttable presumption of unreasonable delay, as set forth in § 52-470 (d) and (e). The petitioner argues that, in addition to his prior habeas counsel's failure to inform him of any statutory filing deadlines, his status as a self-represented party when he filed this petition caused the delay in filing insofar as his conditions of confinement had caused him to be unaware of the deadline set by the 2012 amendments to § 52-470. In response, the respondent argues that the unambiguous meaning of good cause instructs that ignorance of the law excuses no one and that the petitioner's conditions of confinement were insufficient to establish good cause for the delayed filing. We conclude that the habeas court did not abuse its discretion in determining that the petitioner had failed to establish good cause for the untimely filing of the second petition.

To determine whether the trial court abused its discretion in concluding that the petitioner had failed to establish good cause, we first must discuss the meaning of the term "good cause." Neither party challenges the definition of good cause applied by the Appellate Court in this case,[8] which properly stated "that to rebut successfully the presumption of unreasonable delay in § 52-470, a petitioner generally will be required to demonstrate that something outside of the control of the petitioner or habeas counsel caused or contributed to the delay." *Kelsey* v. *Commissioner of Correction*, supra, 202 Conn. App. 34. Thus, we will assess whether the habeas court abused its discretion in determining that the petitioner failed to demonstrate that something outside of his control, or the control of habeas counsel, had caused or contributed to the delay in the filing of his second petition.

As we previously stated, the Appellate Court set forth several factors to aid in determining whether a petitioner has satisfied this definition of good cause, namely, "(1) whether external forces outside the control of the petitioner had any bearing on the delay; (2) whether and to what extent the petitioner or his counsel bears any personal responsibility for any excuse proffered for the untimely filing; (3) whether the reasons proffered by the petitioner in support of a finding of good cause are credible and are supported by evidence in the record; and (4) how long after the expiration of the filing deadline did the petitioner file the petition." Id., 34–35. Although neither party argued for an alternative definition of good cause, the petitioner did argue that the legislative history demonstrates that a petitioner's lack of knowledge of the applicable statutory deadline should be an additional factor considered in the good cause inquiry. In response, the respondent argues that consulting the legislative history is inappropriate

under § 1-2z due to the lack of ambiguity in the statutory definition of good cause. As the general definition of good cause is undisputed, this inquiry is more accurately framed as determining which factors habeas courts may consider in concluding whether a petitioner has satisfied the definition of good cause. Because § 52-470 is silent on that matter, and because that silence leaves the statute susceptible to numerous plausible interpretations as to its application, our principles of statutory interpretation instruct that consulting the legislative history on this point is appropriate. See, e.g., *State* v. *Ramos*, supra, 306 Conn. 136–37; *Stuart* v. *Stuart*, supra, 297 Conn. 37; *Curry* v. *Allan S. Goodman, Inc.*, supra, 286 Conn. 407.

In enumerating the four nonexhaustive factors related to the good cause analysis, the Appellate Court consulted both textual and extratextual sources for guidance. See *Kelsey* v. *Commissioner of Correction*, supra, 202 Conn. App. 33–35. It did not, however, consult the legislative history. Accordingly, we turn to the legislative history to assess the petitioner's argument as to additional factors relevant to the good cause determination.

During debate on the 2012 amendments to § 52-470, Representative Arthur J. O'Neill asked, "[w]hat would [a petitioner] have to prove to rebut the presumption of untimeliness?" 55 H.R. Proc., Pt. 5, 2012 Sess., p. 1598. In response, Representative Gerald M. Fox III stated: "[T]he way I would envision a petitioner meeting the rebuttable presumption requirement would be, if for some reason that petitioner had no knowledge that the Second Circuit . . . had determined that one of our laws was unconstitutional, and as a result, the time were to lapse, I think that that may be an example of when a petitioner would be able to rebut the presumption." Id., pp. 1598–99. Later in that discussion, Representative David K. Labriola asked whether one of the main purposes of the bill was to address issues regarding the delay of habeas petitions and petitioners' abuse of the petition to delay the process. Id., p. 1602. Representative Fox responded in the affirmative, stating that "every[one] involved . . . felt that resources could be better spent and better used [toward] those claims where the outcome . . . could potentially be in question." Id. Further, although § 52-470 distinguishes nonmeritorious petitions, which are addressed in subsections (a) and (b) of the statute, from untimely petitions, which are addressed in subsections (c) through (f) of the statute, the legislative history demonstrates that preserving a petitioner's ability to pursue meritorious claims remained a prevailing goal of the 2012 amendments. See, e.g., Conn. Joint Standing Committee Hearings, supra, p. 4798, remarks of Chief State's Attorney Kane ("I think everybody recognizes that . . . it's a problem that needs to be dealt with and needs to be dealt with fairly without preventing people from . . . being able to raise legitimate claims. And . . . it is a

financial concern, but it's an important thing for justice . . . .").

With this context in mind, although we agree with the petitioner that the legislature certainly contemplated a petitioner's lack of knowledge of a change in the law as potentially sufficient to establish good cause for an untimely filing, the legislature did not intend for a petitioner's lack of knowledge of the law, standing alone, to establish that a petitioner has met his evidentiary burden of establishing good cause.[9] As with any excuse for a delay in filing, the ultimate determination is subject to the same factors previously discussed, relevant to the petitioner's lack of knowledge: whether external forces outside the control of the petitioner had any bearing on his lack of knowledge, and whether and to what extent the petitioner or his counsel bears any personal responsibility for that lack of knowledge. In this case, the petitioner's lack of knowledge of the statutory amendments apparently attributable to his conditions of confinement could have certainly been considered in the habeas court's good cause determination.

Accordingly, we now turn to the habeas court's determination in the present case. Based on its memorandum of decision, the habeas court premised its good cause determination on the length of the delay and the evidence in support of the petitioner's argument that his conditions of confinement caused his lack of awareness of the statutory deadline. Although the legislative history demonstrates that a lack of knowledge of changes in the law may well amount to good cause in a particular case, the facts testified to by the petitioner nevertheless do not support his claim in that respect. The petitioner testified that, at the relevant times, he did have access to the assistance of attorneys, albeit not for this particular matter. Prior to December, 2013, the petitioner was incarcerated in facilities that either did not have law libraries or that did not allow him access to them. Significantly, however, the petitioner testified that he had access to legal resources while housed in general population at MacDougall-Walker Correctional Institution (MacDougall) from December, 2013, through October 1, 2014, which is the date when the statutory deadline for a timely filing of a successive habeas petition expired. See footnote 3 of this opinion. He testified that the resource center at MacDougall had "law books, a lot of federal law books. *They have* [*the*] *General Statutes.* They have some books." (Emphasis added.) Finally, when asked to summarize his explanation for the delay in filing the second petition, the petitioner stated that he was housed in and out of administrative segregation due to a disciplinary problem.

The habeas court's memorandum of decision suggests that, in exercising its discretion, the court considered whether external forces outside the control of the petitioner had any bearing on the delay and how long

after the expiration of the filing deadline the petitioner filed the second petition to be controlling in the present case. Considering the testimony in the record, we conclude that the habeas court did not abuse its discretion because the record indicates that, for the periods that the petitioner was out of administrative segregation in the ten months leading up to the filing deadline in this case, the petitioner had access to a resource center that included the General Statutes.[10] Moreover, it also was reasonable for the habeas court to consider in its good cause analysis that the petitioner had filed his second petition not shortly after the filing deadline but more than two years after that deadline lapsed. Even in light of the remaining factors a habeas court can consider in its good cause determination, none outweighs the factors considered by the habeas court to the point that it was unreasonable in determining that the petitioner failed to establish that something outside of his control had caused or contributed to the delay. We conclude, therefore, that the habeas court did not abuse its discretion in determining that the petitioner had failed to demonstrate good cause for the delay in filing the second habeas petition, and the court properly dismissed the petition in accordance with that determination pursuant to § 52-470 (d) and (e). Accordingly, the Appellate Court properly affirmed the judgment dismissing the habeas petition.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 52-470 provides in relevant part: "(d) In the case of a petition filed subsequent to a judgment on a prior petition challenging the same conviction, there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed after the later of the following: (1) Two years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; [or] (2) October 1, 2014 . . . .

"(e) In a case in which the rebuttable presumption of delay under subsection . . . (d) of this section applies, the court, upon the request of the respondent, shall issue an order to show cause why the petition should be permitted to proceed. The petitioner or, if applicable, the petitioner's counsel, shall have a meaningful opportunity to investigate the basis for the delay and respond to the order. If, after such opportunity, the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition. For the purposes of this subsection, good cause includes, but is not limited to, the discovery of new evidence which materially affects the merits of the case and which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection . . . (d) of this section. . . ."

[2] We originally granted the petitioner's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly determine that 'abuse of discretion' is the appropriate standard of review for dismissals of habeas petitions pursuant to . . . § 52-470?" And (2) "Did the Appellate Court correctly determine that the petitioner had failed to establish good cause necessary to overcome the rebuttable presumption of unreasonable delay as set forth in § 52-470?" *Kelsey* v. *Commissioner of Correction*, 336 Conn. 912, 244 A.3d 562 (2021).

Subsequently, the respondent, the Commissioner of Correction, moved for modification of the certified questions. We granted that motion and modified the certified questions as follows: (1) "Did the Appellate Court correctly determine that 'abuse of discretion' is the appropriate standard of review of a habeas court's dismissal of a successive habeas petition

following its determination that the petitioner had not demonstrated good cause for the untimely filing pursuant to . . . § 52-470?" And (2) "Did the Appellate Court correctly determine that the habeas court did not err in finding that the petitioner had failed to establish good cause necessary to overcome the rebuttable presumption of unreasonable delay as set forth in § 52-470?" *Kelsey* v. *Commissioner of Correction*, 336 Conn. 941, 250 A.3d 41 (2021).

We acknowledge the argument made by the respondent in his brief that, although this court granted the respondent's motion to modify the certified questions, our modification to the first certified question did not render it a proper statement of the issues. The respondent argues that the certified question should reflect the Appellate Court's review of the habeas court's good cause determination, rather than its review of the habeas court's dismissal of the petition. The respondent proposes the following, alternative certified question: "Did the Appellate Court correctly determine that 'abuse of discretion' is the appropriate standard of review of a habeas court's determination as to whether a petitioner has satisfied the good cause standard of . . . § 52-470?" However, we decline to further modify the first certified question, as it accurately reflects the conclusion of the Appellate Court, and any additional modification would have no bearing on our decision in this appeal.

[3] Although the habeas court, in its memorandum of decision, cited the filing deadline imposed by § 52-470 (d) (1), the respondent correctly observes that the filing deadline applicable in the present case is governed by § 52-470 (d) (2). Specifically, the statute indicates that the applicable deadline is the later of the three enumerated deadlines. Subdivision (1) of § 52-470 (d) imposes a deadline of "[t]wo years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review," which would result in a successive petition filing deadline in July, 2014. In contrast, § 52-470 (d) (2) imposes a filing deadline of October 1, 2014. As the later date is October 1, 2014, § 52-470 (d) (2) applies in the present case. This error is not, however, determinative of the good cause or standard of review issues before us in this certified appeal.

[4] "[I]t is well established that testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to address by legislation." (Internal quotation marks omitted.) *Boardwalk Realty Associates*, *LLC* v. *M & S Gateway Associates*, *LLC*, 340 Conn. 115, 131–32, 263 A.3d 87 (2021).

[5] Practice Book § 23-29 provides: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that:

"(1) the court lacks jurisdiction;

"(2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted;

"(3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition;

"(4) the claims asserted in the petition are moot or premature;

"(5) any other legally sufficient ground for dismissal of the petition exists."

[6] Practice Book § 23-24 provides: "(a) The judicial authority shall promptly review any petition for a writ of habeas corpus to determine whether the writ should issue. The judicial authority shall issue the writ unless it appears that:

"(1) the court lacks jurisdiction;

"(2) the petition is wholly frivolous on its face; or

"(3) the relief sought is not available.

"(b) The judicial authority shall notify the petitioner if it declines to issue the writ pursuant to this rule."

[7] Habeas courts do not entirely lack discretion when assessing the existence of cause in the procedural default context. See, e.g., *Newland* v. *Commissioner of Correction*, supra, 331 Conn. 559 (referencing "the habeas court's equitable discretion with respect to procedurally defaulted claims" (internal quotation marks omitted)). Nevertheless, the factors considered in the cause determination to overcome a procedural default do not require the same degree of discretion necessary to make a good cause determination under § 52-470 (e), as emphasized by the statute's legislative history and this court's prior discussion of the statute.

[8] Indeed, we read the respondent's argument as supportive of the Appellate Court's definition of good cause. The respondent argues that the statutory silence as to the definition of good cause can be resolved according to the

well settled principles of ejusdem generis. See, e.g., *Soto* v. *Bushmaster Firearms International, LLC*, 331 Conn. 53, 140, 202 A.3d 262, cert. denied sub nom. *Remington Arms Co., LLC* v. *Soto*,     U.S.    , 140 S. Ct. 513, 205 L. Ed. 2d 317 (2019) (canon of ejusdem generis "applies when a statute sets forth a general category of persons or things and then enumerates specific examples thereof," and "the general category [is construed to encompass] only things similar in nature to the specific examples that follow"). This is consistent with the Appellate Court's conclusion that, "[b]y indicating that good cause for filing an untimely petition could be met by proffering new legally significant evidence that could not have been discovered with due diligence, the legislature signaled its intent that a good cause determination pursuant to § 52-470 (e) must emanate from a situation that lies outside of the control of the petitioner or of habeas counsel, acting with reasonable diligence." *Kelsey* v. *Commissioner of Correction*, supra, 202 Conn. App. 33–34.

[9] Contrary to the respondent's arguments on this point, we also conclude that, in addition to the factors discussed by the Appellate Court, the habeas court may also include in its good cause analysis whether a petition is wholly frivolous on its face. It is consistent with the legislative intent of § 52-470 that the good cause determination can be, in part, guided by the merits of the petition. Based on the extensive legislative discussion in support of relieving the dockets of the habeas courts to allow for consideration of meritorious petitions, and this court's statement, unspecific to a particular subdivision of the statute, that "the new provisions of § 52-470 'are intended to supplement that statute's efficacy in averting frivolous habeas petitions and appeals' "; *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 715; we cannot agree with the respondent that subsections (c) through (f) of § 52-470 are entirely separate in purpose and operation from subsections (a) and (b) of the statute. Further, throughout the hearings on the 2012 amendments, the filing deadlines were distinguished from strict statutes of limitations. See, e.g., Conn. Joint Standing Committee Hearings, supra, p. 4852, remarks of Chief Public Defender Susan O. Storey (describing "the presumption of delay instead of a strict statute of limitations"). The respondent's position that the merits can have no bearing on the good cause determination is antithetical to the purpose of the statute to ensure that the habeas courts preserve resources to promote the effective administration of justice.

[10] Although there was no testimony for the habeas court to consider as to how long the petitioner remained in general population after his initial placement in December, 2013, or whether the version of the General Statutes in the McDougall resource center was current, § 52-470 (e) places the burden on the petitioner to produce the evidence necessary to demonstrate good cause for the delay. We note that there is no evidence to indicate that the petitioner spent a significant amount of time in administrative segregation without access to the resource center. There is also no testimony indicating that the revision to which the petitioner had access was out of date, and, thus, it was reasonable for the habeas court to conclude that the petitioner did not demonstrate that his conditions of confinement established good cause sufficient to excuse his filing delay.

---